Case numbers 241170, 241197, and 241251. Donald Freed v. Michelle Thomas et al. Oral argument not to exceed 15 minutes per side with 15 minutes for the plaintiff and 15 minutes to be shared by the defendants and intervener. Mr. Ellison, you may proceed for the appellant cross-appellee. Good late afternoon. Philip Ellison appearing on behalf of Donald Freed as the appellant and cross-appellant. I'm reserving three minutes for rebuttal. I'd like to bring up just a couple of points today and of course answer any questions that the panel may have. The narrowest grounds that this court can decide this case is on North Cross. It is my position that the lower trial court judge that decided the issue of attorney's fees in what we can now call three to three simply did not do the rigorous analysis, and I don't want to borrow that from class action law, but enough of analysis I should say to cross the threshold to to otherwise fulfill their obligations under North Cross. The obligations of a trial judge is to give in those circumstances enough information that the court can understand why it ruled the way it ruled. And the common way we look at are the what were commonly the non-exhaustive but usually formative read factors, which is which is the case that tends to get cited over and over again as the basis for attorney's fees, and the trial judge simply did not conduct any of that analysis. Now he may have connected that analysis in his head or perhaps in chambers, but he did not conduct that analysis so that I can understand why the attorney fee was reduced in such a dramatic fashion. So from your perspective if we were to vacate and remand you would be satisfied? We would be satisfied with that with that answer in of itself for the purposes of attorney's fees. Now it doesn't answer the cross appeal by the state which I'll address in just a second, but I think it is the narrowest grounds with the instruction that this court met what it said in North Cross, try again. Of course I don't know if the court noticed that the judge that decided this case has since retired and Judge Lightman has been reappointed as successor judge. We would be fine with him handling that issue with the instruction to follow North Cross standards and using, I would say if you want even go as far as to say, use the read factors as your guide and we would be satisfied with that as the basis for our appeal. Can I ask a question on that? So with respect to the factors, with respect to the community rate, where is it that you think that the district judge, what location or what community should the district judge have considered you to be a part of? So your chambers or your chambers, I have chambers, you have an office, it's in Saginaw, but you practice in federal court in Detroit. I'm in Cincinnati regularly. So what is the rule or what's the common practice about how judges handle this community factor when you have someone who practices in various locations? Well because I brought the case in federal court, I have no say on what judge gets assigned the case and where that judge that gets assigned sits. So it could be Flint, it could be Ann Arbor, it could be Detroit. It could be Bay City. It could be Bay City, which I get appointed to quite a bit because of that being the Northern Division in that respect. It's my belief, it's my, I was going to say the rule I think the court should apply is based on the fact that the court case is assigned to at least in the jurisdiction, the Eastern District jurisdiction and it should be based on to make it rule, make it so that the gamesmanship doesn't get played and this is it should be the rule of wherever the judge sits. I think that's a fair analysis and if the judge thinks that a particular his jurisdiction is charging too much or too little in that respect, the read factors give him the authority or her the authority to change, to shift up or shift down the rates that should be applied as one factor in an overall 12-factor non-exhaustive list in that respect. Is your argument that the judge needs to go through each of these factors and state on the record what the judge thinks about each of those factors? I have an opinion as to that. I mean the case law isn't clear as to how detailed that has to be. It has suggested rough justice is the phrase that gets used in the attorneys fees world a lot. What my position is, is just saying I've considered it and I'm doing X is not enough. That's not necessarily a fair characterization of this transcript or you think it is? I think it is. I think it is because again maybe even if the judge was to say I find these one or two factors to be the most important, these two factors to be the least, at least it gives a guidepost for anyone else being an appeals court, the public, myself, my client, the understanding is why the judge reached at the decision that he did. Because again the issue that, I'm a plaintiff's attorney, I know Judge Larson, I think you're the third on three out of three on these freed cases here. My lucky day. Your lucky day. I wasn't quite able to convince you I guess the first time on the first one but I was I think able to convince you on the second one. But third here, that we're here on third now, is as the court notices is that if we try to take this issue that I only succeeded on the takings claim and in part based on the damages, which never has been done before in federal court, if we actually want to do an analysis, like if we're keeping a scorecard, as I point out on page 18 of my brief, of my opening brief, we look at all the issues that the defense raised and lost. And just, I mean, a couple of them just right off the bat, lack of jurisdiction, uncleans hand, latches, estoppel, failure to medic, these are all issues that they raised and failed on and didn't succeed. That I had to overcome all of those to be able to get the judgment that I did. Some of your success, you would agree, is attributable to these other cases, to Nick and Raffaele and these other cases. Well, Nick opened the door, but at the time when I was here on freed one, wayside was a bar to this court. I had to overcome that. And as much as I do know brother counsel, we've all known each other through this litigation, the one thing I vehemently disagree with brother counsel on is that Pacific Legal did not lead this cause. I led this cause in this particular case. They offered to help after the case got to this court. I guess what I'm getting at, the district court, though, did take into account, and it is on the transcript, that there was at least some measure of success, and I'm sure you would come at it differently than the court did, that was attributable to other lawyers and other cases. That's fair. I don't think that's unfair, but any case that's brought is attributable to the precedent that came before it, obviously, in that respect. These are very fact-intensive inquiries, and that's why there's an abuse of discretion standard. Well, and I had to overcome, and I think what the most important part is, from the beginning I've had to overcome not only the wayside decision that was there, that had to be overcome to open the doors to federal court. Every step of the way, the county didn't come back and say, we're willing to pay, and did pay. They fought every step of the way, and if the judgment got entered by the court after Freed 1, before Freed 2, the county still refused to pay. And it took two more years, and in fact, the court, as part of the supplement, noticed they still hadn't paid completely on the judgment. So this idea that they're like, you know, this would have just been, you know, a simple case, is beside the record and beside their own actions in this respect. Isn't it true in this case that you, the case was completely briefed in May of 2019. Then the Supreme Court decides Nick. Then we ordered supplemental briefing on how Nick affects the case. Then we ordered supplemental briefing on whether to hold the case for Raffaelli. Correct. Then the Michigan Supreme Court, that's October 19, they decide the case in 20. We don't issue Freed 1 until September of 20. So the whole thing was briefed. The work was done back in May of 19 without the benefit of these other cases. That is correct. That is correct. And so like the argument that you've got a boost from these cases, well you've done the briefing, it's this court that held the cases for Nick and Raffaelli. And of course what's important is the court may have noticed is one of the meekness in Raffaelli and one of the meekness in Tyler, which of course kind of was a big footprint on all these styles of cases. Mr. Freed, through me, filed the meekness briefs in support of those. And I'd like to think that Chief Justice Roberts stole the idea of what's Caesar's ode to Caesar came from my meekness brief that I submitted to the Eighth Circuit. Whether he did or not, I don't know. But it's an important part is that Freed has been at the crossroads of every major decision that's been in this case. So simply say that we were a come-along or a Johnny-come-lately is simply beside the record and contrary to the record and the timeline that you've just put out in this respect. So I would ask the court, even if the court was inclined to reach the Freed factors to decide whether there was an abuse of discretion on this, that in fact that my client was highly successful. And I used, of course, all sorts of colorful language in the brief, but I think there's more than simply just that I came in and, you know, cashed out on what other people had done before in that respect. If I could, I'd like to switch to the state argument. I'll see if the court has any other questions on that. It appears we've lost counsel Curlew. Oh, well let's get him back. Yes, ma'am, we're working on that. Give me one second. You're not muted. There we go. All right, I'm back. Okay, counsel, can you hear us? Welcome back, counsel. Okay, I'm gonna resume the timer. All right, thank you. May I continue? Yes. All right, thank you. Unless the court has any other questions, I'd like to shift to the issue involving the state's cross appeal. In this case, the state's cross appeal in this matter is that they feel that they have no obligation being a voluntary intervener in this case because they participated quite heavily in this case. It's my position that the state has responsibility under 28 U.S.C. 2403 sub B. It's not a matter of my preference or my advocacy. Congress has made that determination and has made the state responsible for cost. And, of course, it is well established in the 1983 litigation context that cost includes attorney's fees. I have no qualms about how the trial judge allocated the percentages. And, frankly, not to be glib, it doesn't matter to me from my perspective as to who's ultimately responsible. But the issue is one that the state did intervene when they were not required to and they waived their sovereign immunity in that respect by voluntarily appearing. The other issue I just would like to flag is I do have this issue of sovereign immunity currently before, in another case, before the Eastern District. And, of course, it is often pointed to in this case. One of the issues that is being somehow dispositive or guiding in this respect, the Sixth Circuit, this panel, or this court, has not actually addressed the interplay of sovereign immunity in 2403 B in this context. So I would ask the court to look carefully at that issue because it does have a major effect on litigants. In cases that I bring, which I'm, I know, I've been before, I don't have been before you yet, but, of course, the other judges on this panel, I bring these types of cases challenging government issues and the state regularly intervenes in these types of cases. And their position is they can intervene as if, I don't know really what they are, because under 1983 litigation they're not a defendant. You have some Article III concerns about what they are in this respect if they're here permitted to appear given the TransUnion decision. So I would ask this court to look carefully at that because, and I see a kind of... TransUnion is applicable because if the state is not a defendant in the case, Congress would have created a harm or an injury to the state and they're not a defendant. So there would be no, there would be no, under TransUnion you have to have both an injury and, the important part, redressability for Congress to create, to have standing for Congress to create a statute to create that obligation. My concern is the state in this case, who has appeared over my objection numerous times, and you can look back, of course, in the record, my concern is that the state is essentially like a super amicus or some sort of super party that doesn't have their case, their interests are not in jeopardy, but yet they're permitted to operate as if they are a party. So did you brief this? I did not brief this here, but the only reason why I'm flagging it, the court here, is because this is, sometimes when the half issue is brought here that the court will say and makes kind of broad, wide statements about the law in this respect, I would ask the court to keep its argument or keep its decision on this on as narrow grounds as possible because there are broader implications here that were not briefed in this particular case. In other words, in other cases you're arguing that the state doesn't have standing to intervene even though Congress has contemplated that they would be an intervener for purposes of this fee statute. That's correct, and the only reason I'm flagging, I'm not asking this court to do anything with this particular case because that we're on 3-3, that ship has sailed at this point, but to be mindful of those issues when having to make a decision, whatever this decision the court may make, as to the interplay of sovereign immunity in 2403B. Unless the panel has any other questions, I appreciate your time today. Thank you. All right, Mr. Curlew. Good morning to the panel, or afternoon to the panel. Thank you for allowing me to appear by Zoom. I hope that my medical tests next month will allow me to start appealing in person again. You look well. Yes. Let me be clear that I don't want to belabor or insult opposing counsel. Mr. Ellison is a vigorous and zealous advocate and I have great respect for him, but in this case, he mentioned Freed II. Well, he had his judgment in February 2021. All that delay we've had for Freed II was so that he could pursue the unicorn of getting fair market value, which the case law has never allowed, and we've spent all that time on a completely unsuccessful argument that he's been making and maintaining. Freed II was a complete failure for him, and he shouldn't be awarded for that, and that's what the district court recognized when it gave the attorney fee reduction that it did. It took off 35% of what he wanted, which covered the period that he's been spending on appeal that got him nowhere. Is that what the court said it was doing? It didn't specifically say that, but it did say it was reducing it by 35%. I mean, I was trying to figure out from reading this record, I could assume that maybe that's what the court was doing, but I was really struggling to find it in the record, in what the court actually said. I'll be honest, the court was not as explicit as it might have been, but I think it was clearly stated enough that... You mean when the court said there are ten factors, I don't remember what they are, but I looked at all of them? Okay. The court said what it said. Yeah, it did. So, if we were trying to reason backwards, by my count, the hours devoted to Freed II would account for 25% of the hours. So, I mean, maybe we could work backwards and say, ah, that must have been what the district court was doing, but then I don't know where the other 10% comes from. Well, there was the other problem that he had in that he was trying to charge Gratiot County for time that was spent with amicus, for time that was spent combating the state. When we looked at his bills, we had to go through it, you'll see, and I outlined this in my brief, there were a lot of his entries were for work that he wasn't doing, wasn't doing successfully, and wasn't doing successfully against the county, and that's the only place that he got success ultimately. He certainly can't charge us for what the state was doing, what for the Michigan Association of Township County or County Treasurers was intervening on. He's got to focus on what it was that he was defending against the county where he won, not having us pay for his litigation against somebody else, his fight against somebody else. I'm sorry, are you talking about opposing the state in terms of its intervention in this case, or are you talking about something else with respect to the state? No, in this case he had entries he was trying to get his attorney fees pushed down to the county for what he was, for items in his billing that were clearly stated to be against the state as intervener, the Attorney Amicus filers. But isn't that accounted for by the 5%, or arguably accounted for by the 5% that was awarded against the state? No, because the state, remember what he was looking for was the overall number, and what he was trying to do was get the number pushed back against the county as well as not only the state but also the amicus, and he was doing quarter-hour billings so that he was charging a quarter-hour to look like at a one-sentence order from this court, he was charging that quarter-hour on. I mean, honestly, if he's these, I'm trying to remember the word he used, the admirable counsel that he is, I don't think it should take 15 minutes to read a one-sentence notice from this court, and that's where the court's other reductions came from. Okay. I mean, beyond that, I've addressed all the things in my brief. I believe that most of what we've done was all for unsuccessful work. We could have settled this thing back in 2021, as we did with a number of other claimants whose attorneys were willing to accept surplus proceeds and just take the payment and resolve it, and we could have done that here too. If the court has no further questions, everything else is outlined in my brief. Yeah. No, go ahead. Counsel, I would just like to ask how much more you think it should be reduced? Well, I think my basic position is that the attorney shouldn't get more than his client got. In this case, his client's basic recovery was less than half of what his client was asking for. We calculated it out to about $37,000. The specific number is in my brief. You don't have any case law for that request, though, Counselor. That's just kind of your sense of fairness. Is that kind of what you're saying? I would say so. I can't say his case that says an attorney should never get more than his client, but I think that if you're getting twice what your client got, he was originally asking for five times what his client got. Honestly, that's just absurd. I think under any assessment, he's still getting twice what his client got, and I just think that's out of proportion to what you're laid of success, which Hensley said is the key factor. But isn't a lot of civil rights litigation done and all you get are nominal damages, and so then the attorney should only get a dollar? Well, this is civil rights litigation. It was clearly a monetary, it was very much from the beginning, absolutely a monetary thing. This wasn't looking for a declaration. It wasn't looking for an injunction. This was a compensation case, and the question is, did you get the compensation you claimed at the beginning, which he was looking for almost $100,000. I believe it was $97,600 and $90.94, very much a liquidated sum in his terms. He didn't even get half that. He barely got more than a third. I have another question, just if you can take me back to how this act worked. So as treasurer, could your client have decided not to retain the entire proceeds from the foreclosure sale, or were you bound by the, what is it, the General Property Tax Act? We were absolutely bound. There was a decision in 2014 in a case called Harbor Watch Condominium Association versus Emmett County Treasurer. Actually, I have a copy here right here, but what that court said was the treasurers were absolutely, and the specific terms of what the General Property Tax Act said they had to do. In fact, they used the phrase, they said, if the county or the treasurer disperses funds, that's the point, is dispersing government funds differently than what the General Property Tax Act says they can, it is an ultra-virus act. Yeah. I would certainly never counsel a client to do an ultra-virus act. Yeah, okay, that was my recollection, but I wanted to... Yeah, that case is Harbor Watch Condominium Association versus Emmett County Treasurer, 2014. Thank you. No, I don't think we have any further questions for you. You have a minute remaining if you have anything. No, I have no need to belabor the court. Just to fill the time, the Attorney General can speak. All right, thank you very much, Mr. Curlew. Thank you. We'll hear from the Attorney General. Good afternoon, and just to clarify, Assistant Attorney General. Oh, well, yes, I'm sorry, the Attorney General's office. Yes, I understood I did not have the AG in front of me. For the state of Michigan, Matt Hodge is appearing for the department. Thank you, Your Honor. I'm here to answer questions, and that's my primary goal, so jump right in if you have questions. Otherwise, I think plainly stated, our position is the department is not liable for costs or fees here, and it's not an across-the-board type of argument that they never could... Excuse me, never could be liable for costs. But under a 1983-1988 analysis, as we briefed and has already come up today, the state is not a person, the department is not a person. It's not liable on the underlying judgment. It was not the foreclosing governmental unit, and even if this court applied an intervener, Zipes-type analysis that said frivolous arguments could result in fee shifting, none of that happened here. In fact, the district courts seem to say the opposite, that none of these arguments were frivolous or added to the litigation in a meaningful way. Counsel, do we even get the... I mean, 2403 makes states... I don't have to read it back to you, right? I mean, help me square that with your position, the text of that statute. Absolutely, and that's my next segue. So, 2403 controls this, right, and it provides what I think are three criteria that are important to this analysis, and not necessarily in the order they're found in the statute, but one, it's limited to cost, court costs specifically, which this court cited in its prior footnote in this case, in the prior appeal. There are thousands of decisions out there that talk about court costs, comma, attorneys fees, comma, and a list. They are clearly separate things, and it's precise wording. And in this instance, the second thing that we have to look at is it's a constitutional challenge. It's costs, court costs, related to the constitutional challenge presentation of that by the intervening state. And the third, and I think where it's a little bit more difficult to parse out, but there's got to be a prevailing issue as against the intervening state. And we find that in the fact that the language of the statute itself says, if I can find it here, this court previously quoted it. I'm just going to paraphrase. Here it is. Have all the rights of a party and be subject to all the liabilities of a party as to the court costs. Well, a party is not liable for fee shifting or cost shifting unless someone has succeeded. So we have to overlay that. You don't just get awarded costs and fees by virtue of filing a lawsuit. You need to prevail. So we're looking at a prevailing constitutional claim as against the state. When this made it to the district court on remand, when they first, when the district court first addressed the merits, the state didn't disagree with Freed on the only claim that he prevailed on. And I'll call it Raffaele-based and not as a, you know, this court held the same thing citing Raffaele. Raffaele-based damages, which is the actual sale price less his debts. That wasn't enough and that led to the second round of appeals, all of which failed. This court completely affirmed the district court's ruling, so it rejected the Eighth Amendment constitutional challenge to the state law, which the state opposed. It rejected the measure of damages based on equity or fair market value, which this court had already rejected in Hall and rejected the Eighth Amendment argument in Hall and the Michigan Supreme Court had rejected several years prior in Raffaele. So... Yeah, but I have a couple of problems with that, that casting of the argument. So first of all, you opposed, so you did oppose the motion for summary judgment in the first place, right? So as a matter of fact, it's not quite true that, like, the way you want to parse it out is, oh yeah, we were willing to say, fine, you can have your just compensation, you know, up to the excess surplus proceeds. We're not going to contest that. But you can't have the Eighth Amendment and you can't have excess, the fair market value. But if you read what you wrote, you actually opposed, you said summary judgment should not be granted for them. So if you opposed the whole motion, it's not like you were like, partial summary judgment would be fine with us. I would, I guess I would have to, I'm going to agree with your, with your recitation of what there was, because I have not looked at the district court filing in the last several weeks, I probably should have, but my recollection is the briefing conceded the part that would have already been granted by the same action in Raffaele. This court had basically already adopted it in the in the first remand order, citing Raffaele. The opposition was to the constitutional challenges that remained, that were re-raised on remand. Okay, just then you would think maybe a partial summary judgment would have been the argument. But even so, I feel like our court in Hensley says that for a party, so the statute makes you like a party as to costs. I think there's also case law that says in 1983 costs include fees. So you can contest that. But let's say right now that I think costs means attorneys fees. Statute makes you like a party as to costs, including fees. A party can, in order to not be liable, it would have to be a factual or legally unrelated matter. That's what Hensley says. And you can't say that your part in the overall liability here is factually or legally unrelatable. As Mr. Curlew just said to us, they were bound to withhold the surplus proceeds because of the statute passed by the state of Michigan. Right, so I think we have sort of some, I don't want to say conflicting, we have things that are at intention. Here we have a claim of immunity by the county, Monell immunity by the county. The Monell was rejected and there was a finding in this and other cases that there was voluntary participation under that statute. So the state is somewhat, it is not an actor under this statute and when it comes in to defend, when it gets to the merits in the district court, that gets back to my prior argument, it's defending on the arguments that still torpedo the entire act that are inconsistent with Raffaelli. I don't know if that answers your question or, I mean I understand what you're saying, at the end of the day it ends up being a state law, it's a local act and by the time that law was being reviewed by the district court that piece of it was not, that wasn't our advocacy. Okay, what do you want to say about how fees are not costs for 1983 purposes? Sure, so we start with the premise that the state is not subject to 1983 fee shifting, so we're not really looking at that, we're looking at 2403B, which sets core costs and so I don't know that we can import, we would just not have to have this, they would just say, you know, as provided in 1983 or whatever by reference, so we're incorporating a whole body of law that doesn't, Congress didn't put here. I see, I see, so you, I see the argument. So, so I, I think I've covered that, you know, it did not prevail against the state and if 2403B controls then it doesn't meet the standard. We had made the argument in the briefing and I'll rely on that, that there are discrete costs that were allowed here that were not prevailing party costs, that's pretty clear. It's really difficult, I don't envy a district court that has to go through a multi-claim lawsuit and figure out what they need to attribute to the prevailing activity and what was justified and what wasn't. It's very difficult, especially with fees, I can see that. We don't think in linear ways, we don't think about one thing and write it down and move on to the next issue, we're thinking about multiple things all at once. But with costs and when you have basically a line item that you can tie back to a particular thing, you can pretty easily figure out whether or not that was a prevailing issue. Counsel, can I ask, and I know this is outside the record, but just, you know, approximately how often does the state intervene in a case like this? I honestly don't know the answer. This is sort of my first foray into this. There were some others after this. We kept getting notices because these challenges have been brought in Eastern and Western District of Michigan in federal courts for the last several years. We did not get involved in all of them. You know, at some point, the furthest one ahead is the one where you need to be involved to be heard. But I will say that for other counsel's statements about this being more common and coming up, this is not a one-off. This is a blueprint. Thank you. I see my time is well up. Yeah, but I thought we still had questions. All right, unless you want to wrap up real quickly. Just ask that the court reverse or amend or vacate that. Any allocation, 0.5%, 5%. In this instance, it's contrary to law. All right. Thank you. Judge, to answer your question, I'm seeing upwards of 50%. Now, brother counsel here is from the tax division. There's not very often the tax lawyers have to jump into federal civil rights cases, but the civil rights division does. And the state operations division, the attorney general does. I mean, I bet you half of my cases now, they're appearing than before. This is becoming a big issue because when the state intervenes into a case, I can't just ignore them. I have to defend against not only Mr. Curlew, who's there on behalf of the county, I have to also defend when the state is there as well. And that's costly for a client who's trying to get justice for what is always a 1983 claim of some sort. A couple of factual points. I just want to clear for the record that brother counsel, Mr. Curlew, made mistakes on. In Freed II, as Judge Larson, you may recall, there was a cross appeal by Gratiot County. Gratiot County didn't come to the court saying, we're good with what happened. They came to the court in Freed II and said, don't take away the judge. They said, take away the judgment from Mr. Freed because there's no Manel liability. So to say that I lost in Freed II is inaccurate. I didn't get the amount of damages I was asking for. I agree. And I still think I'm right about that. And I'm still continuing to pursue that to Washington, D.C., probably next month. Maybe we might have that issue someday. But I acknowledge the court didn't rule in my favor on that. But that doesn't mean you don't try when you're a civil rights attorney trying to change the law. And as you just heard from Harbor Watch, the treasures were bound to do this. They were bound to violate the Constitution. And unless a court, unless someone like myself comes in on behalf of a client, they continue to violate the Constitution. Second of all, I'd like to point out, Mr. Curlew also said we only got one-third of whatever we were asking for in the beginning. That's actually inaccurate, too. If the court will look at the docket since the original judgment, the judgment awarded surplus proceeds plus interest, plus attorney's fees, which is more than Michigan ever awarded under Raffaelli. And more importantly, that interest, if you do the math and pull it out, we got a 45% increase off of the surplus proceeds. We got almost $60,000 back on a claim that we were initially asserting was about $90,000. So to say that we got a trifle or we got a sliver of what we were asking for is simply not true. Now, did I get, in every case I bring, you always, in your initial complaint, bring your maximum claims. You always do that. Now, just because if I come to with a contract claim and I say I'm owed X under the contract and the court concludes that I'm not concluded that under the contract, it doesn't mean I lost the contracts case. It's just that the court has to apply law, especially in a circumstance like this one, which is a matter of first impression. And it was a matter of first impression, and very much so. Lastly, to answer your question, Judge Rich, you asked about the sense of equity on the idea of should the number be a percentage of whatever it is, if I may finish. I've briefed in the third reply brief, the U.S. Supreme Court's already dealt with this. It has rejected the rule of proportionality, and that is the Riverside decision. Not only is it not the law, it's actually not accurate of Mr. Curlew's gut feeling on this, but more importantly, the U.S. Supreme Court has said there is no rule of proportionality because of the uniqueness of 1983 litigation. Unless the court has any other questions, thank you very much. All right, thank you.